TAYLOR, J.
Joelle Gibbs appeals her conviction of culpable negligence with injury. We re *444 verse because the trial court gave an inadequate jury instruction on self-defense.
The facts of this case are a sad and disturbing reminder of the tragic consequences that racial conflict can lead to. Appellant, a 40-year old black woman, saw an elderly white man and woman sitting on a bench outside an apartment building and said to them, “Good morning. How are you?” When the couple did not respond, she asked why they did not return her greeting. The woman, Julia Osmun, said to appellant, “Get away from here you dirty nigger, you don’t belong here.” Appellant responded with a racial slur and an obscene “mooning” gesture and the two women wound up in a physical altercation. According to appellant and her witness, Sheldon Solomon, Osmun got up from the bench, approached appellant, and started swinging at her. In response, appellant stepped back and pushed Osmun. Osmun staggered back and then fell down on some shrubbery. Solomon and the man who had been sitting next to Osmun helped her back up on the bench, where she remained for a few minutes until a friend drove up and carried her to Manor Care. Within a half hour, Osmun died of heart failure.
The medical examiner ruled the death a homicide caused by cardiac arrhythmia due to stress after an altercation. The deceased was sixty-five years old with a history of heart disease, obesity, and other chronic ailments. She had undergone cardiac surgery several years before the altercation. The state charged appellant with murder in the second degree. After a jury trial, appellant was found guilty of culpable negligence with injury, a lesser included offense.
Witnesses at trial gave different accounts as to who initiated the physical confrontation between the two women and the amount of force used by appellant. Appellant’s theory of defense was that she pushed the victim in self-defense. At the jury charge conference, appellant requested an instruction on justifiable use of non-deadly force, but asked that the standard instruction be modified to clarify what “provocation” means. The standard instruction read:
The use of force not likely to cause death or great bodily harm is not justifiable if you find Joelle Gibbs initially provoked the use of force against herself.
Appellant sought addition of the words “by force or threat of force” to the standard instruction, so that it would read:
The use of force not likely to cause death or great bodily harm is not justified if you find Joelle Gibbs initially provoked the use of force against herself, by force or the threat of force.
(Emphasis added).
Defense counsel wanted the jury to understand that any provocation by appellant had to be “by force or the threat of force.” He was concerned that the jury might be confused and think that “merely provoking someone by complaining that they didn’t say good morning” justified the victim’s attack on appellant and did not justify appellant in defending herself against that attack.
The court denied the request for clarification and gave the standard instruction on justifiable use of non-deadly force. Appellant adequately preserved the issue for our review. See Avila v. State, 781 So.2d 413, 415 (Fla. 4th DCA 2001); Layman v. State, 728 So.2d 814, 817 (Fla. 5th DCA 1999).
We agree with appellant that the jury instruction given by the trial court was inadequate to properly charge the jury in this case. The instruction stated that appellant could not defend herself with non-deadly force if she “initially pro *445 voked” the victim. By not limiting provocation to the use or threat of force, the court failed to make the jury aware that the word “provoked,” as used in the instruction, did not refer to mere words or conduct without force. Stated another way, the instruction given by the court eliminated the use of non-deadly force in. self-defense if there was any provocation by the defendant — no matter how slight or subjective the provocation. By that standard, a mere insult could be deemed sufficient to prohibit defending oneself from an attacker.
In this case, appellant’s self-defense was based on testimony that the victim verbally attacked her and then aggressively approached and swung at her. According to the defense, it was only then that appellant pushed the victim and used some force against her. Because the instruction did not limit provocation to some force or threat of force, the instruction could have misled the jury to believe that appellant’s pointedly asking the victim why she failed to acknowledge her greeting and/or appellant’s racial retorts and obscene gestures were sufficient provocation to preclude appellant from defending herself from an attack by the victim.
The state argues that the trial court did not err because it gave the standard jury instruction. However, the Florida Supreme Court’s approval of the standard instructions cannot relieve the trial judge of responsibility under the law to charge the jury properly and correctly in each case as it comes before that judge. Matter of Use By Trial Courts of Standard Jury Instructions, 431 So.2d 594, 598 (Fla.1981). The clarification that the defense sought here was peculiarly applicable to the facts of the case and should have been given. See Outlaw v. State, 82 Fla. 68, 89 So. 342, 343 (1921) (where there is the potential for the jury to be misled as to who was the provocateur or aggressor it is reversible error not to give a clarifying instruction on the issue). See also Chandler v. State, 744 So.2d 1058, 1061 (Fla. 4th DCA 1999)(reversing conviction of disorderly conduct where trial court failed to give a requested jury instruction when there was a reasonable possibility that the jury would be misled or confused by failure to give that instruction).
For the above reasons, we reverse appellant’s conviction and sentence. Our reversal on the jury instruction issue renders the remaining issues on appeal moot.
REVERSED.
WARNER, C.J., and POLEN, JJ., concur.